IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAMUEL JONES III,

    Plaintiff,

v.                                  CASE NO.: 1:08cv185-SPM/GRJ

WALGREEN CO.
d/b/a WALGREENS,

    Defendant.

_____/

### ORDER DENYING MOTION TO SET ASIDE SETTLEMENT AGREEMENT

Plaintiff's motion to set aside the settlement agreement came before the Court for an evidentiary hearing on August 22, 2012. Upon consideration of the evidence and arguments presented, the Court makes the following findings of fact and conclusions of law.

1.    The determination of whether a binding settlement agreement was reached by the parties is governed by principles of Florida contract law. Murchison v. Grand Cypress Hotel, Corp., 13 F.3d 1483, 1485-86 (11th Cir. 1994).

2.    Under Florida contract law, an attorney may settle a client's case if the client has given him clear and unequivocal permission to do so. Bursten v.

Green, 172 So.2d 472 474 (Fla. 2d Dist. Ct. App. 1965).  The client will then be bound by the settlement reached.  Id.  If, however, the attorney did not have authority to settle, the client will not be bound by the settlement unless the client subsequently ratifies or accepts the benefits of the settlement.  Id.; Nagymihaly v. Zipes, 353 So2d 943, 944 (Fla. 3d Dist. Ct. App. 1978).

3.     The circumstances in this case demonstrate that Plaintiff gave his attorney clear and unequivocal authority to settle.

4.     Plaintiff and his attorney, Archibald J. Thomas III, had numerous discussions about settlement. They engaged in two formal mediation conferences with Walgreens on September 22, 2009 and January 14, 2012, where they discussed settlement, including standard terms that are included in a typical settlement agreement such as provisions for confidentiality, no rehiring, non-disparagement, and a general release. The mediations ended in impasse because the Plaintiff and Walgreens could not agree on a monetary amount to settle the case.

5.     After the first trial of this case ended in a hung jury on July 8, 2011, Plaintiff and Attorney Thomas discussed settlement again. They continued negotiations with Walgreens as the date for retrial approached. These negotiations focused on the monetary amount for settling the case with the standard terms being a given. There were also discussions about allowing Plaintiff to resign in lieu of being terminated and structuring the settlement in a

way that Plaintiff would have less in taxes to pay, and thus net more to himself, all of which Walgreens was willing to do.

6. With the retrial looming, the settlement offers from Walgreens were increasing. Although Plaintiff wished to proceed to trial to vindicate his rights, he was having difficulty paying for Attorney Thomas's legal services and owed Attorney Thomas approximately $21,000.00 in fees and costs for the first trial.

7. During the back and forth of settlement negotiations with Walgreens, Plaintiff sent Attorney Thomas an email on November 1, 2011 with an instruction that Plaintiff would "consider $160,000 . . . [but] [p]lease don't commit to anything." Attorney Thomas explained to Plaintiff that the offers going back and forth between Plaintiff and Walgreens were real offers to settle the case, not hypothetical proposals. He explained that it made little sense for Plaintiff to propose a settlement amount to Walgreens if Plaintiff did not intend to actually settle if Walgreens agreed to the amount. He also explained that Walgreens would not make any movement on the settlement amount if Plaintiff was unwilling to make a binding offer. With this explained, Plaintiff gave Attorney Thomas authority to make a $160,000 settlement offer to Walgreens.

8. Plaintiff and Walgreens continued with their settlement negotiations. Attorney Thomas urged Plaintiff to accept a settlement if Walgreens came up to $150,000.00. Attorney Thomas told Plaintiff that it would be foolish to gamble on winning at trial in the face of such a reasonable offer

from Walgreens. Attorney Thomas also advised Plaintiff that Attorney Thomas was unwilling to finance the cost of a second trial on top of the $21,000.00 that Plaintiff still owed to him for the first trial.

9. As Plaintiff and Attorney Thomas were preparing for the pretrial conference, they again discussed settlement. On Sunday, November 20, 2011, Plaintiff met with Attorney Thomas. They discussed making a $155,000.00 settlement offer to Walgreens. They expected that Walgreens would counter with $145,000.00. Attorney Thomas explained to Plaintiff that if that occurred, Attorney Thomas would reduce his legal fees by $10,0000.00 resulting in net settlement amount to Plaintiff at the same level as Plaintiff's $155,000.00 offer. Plaintiff authorized Attorney Thomas to make Walgreens an offer of $155,000.00. Attorney Thomas conveyed the offer to Walgreens that Sunday. The next day, Monday, November 21, 2011, instead of countering with $145,000.00, Walgreens accepted Plaintiff's $155,000.00 offer.

10. Plaintiff's offer and Walgreens' acceptance resulted in a binding settlement of the case. All essential terms were covered by the parties' agreement, including the monetary amount that was the subject of the parties' prolonged negotiations, Plaintiff's resignation in lieu of termination, and the standard terms discussed at mediation. Under Florida law, such a settlement agreement is binding even if it is not in writing and even if no money has been transferred. <u>State Farm Mutual Automobile Insurance Co. v. InterAmerican Car</u>

Rental, 781 So.2d 500, 502 (Fla. 3d Dist. Ct. App. 2001).

11.     On Tuesday, November 22, 2011, Plaintiff sent Attorney Thomas an email asking if he had conveyed the $155,000.00 offer to Walgreens. If not, Plaintiff asked Attorney Thomas to hold off on doing so. By that time, however, the offer had already been conveyed and accepted, resulting in a binding settlement.

12.     Plaintiff argues that despite the back and forth with Walgreens on the settlement amount, he never intended to bind himself with the offers he was making to Walgreens and only authorized Attorney Thomas to "test the waters." Attorney Thomas previously explained to Plaintiff, however, that he needed to make real offers to get Walgreens to engage in negotiations. Plaintiff knew this and gave Attorney Thomas clear and unequivocal authority to make the $155,000.00 settlement offer. Based on the foregoing, it is

ORDERED AND ADJUDGED:

1.     Plaintiff's motion to set side the settlement agreement (doc. 138) is denied.

2.     This case remains closed in accordance with the Order of Dismissal (doc. 137) dated November 22, 2011.

DONE AND ORDERED this 28th day of September, 2012.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Senior United States District Judge